UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELEVATION REPS OF THE
ROCKIES, INC., a Colorado
Corporation

       Plaintiff,

v.                                                   Case No:  2:22-cv-279-JLB-KCD

ELEVATE FOODSERVICE
GROUP, LLC, and MITCHELL
MARCOTTE,

       Defendants.
_____/

## ORDER[1]

Elevation Reps of the Rockies, Inc. ("Elevation") alleges Elevate Foodservice Group, LLC ("EFG") and Mitchell Marcotte, EFG's manager and owner, have committed trademark infringement. (Doc. 1.) Mr. Marcotte, an individual Defendant who lives in Massachusetts, argues the Court lacks personal jurisdiction over him, and he moves the Court to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(2). (Doc. 24.) The Court disagrees with Mr. Marcotte and DENIES his motion.

---

[1] Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND

Elevation and EFG offer "the identical services of representing manufacturers in the field of commercial foodservice equipment and supplies." (Doc. 1 at 1–2.)  Mr. Marcotte, a Massachusetts resident, is EFG's manager and owner.  (Doc. 1 at 2; Doc. 33 at 5.)

Elevation has grown its business to a client base of at least 64 manufacturers using its word mark "Elevation Foodservice Reps," the related marks "Elevation Reps" and "Elevation," and its Elevation Food Reps Logo (collectively, the "Elevation Marks") from as early as January 2010.  (Doc. 1 at 3–4.)

Mr. Marcotte founded EFG in 2020 and operates using the mark and tradenames, "Elevate Foodservice Group" and "Elevate FSG," along with a logo (collectively, the "EFG Marks") that Elevation alleges are confusingly similar to its own.  (Doc. 1 at 5.)  On October 17, 2020, Defendants registered the domain name elevatefsg.com (the "EFG Website").  (Doc. 1 at 5.)  Using its marks and website, EFG provides, markets, advertises, promotes, offers for sale, and sells its services through online marketing, Facebook, Twitter, Instagram, and Pinterest.  (Doc. 1 at 6.)

Elevation alleges EFG's acts have caused and are likely to continue to cause the relevant consuming public to have the mistaken belief that EFG's services originate from, are associated with, or are otherwise authorized by Elevation.  (Doc. 1 at 6.)  By a cease-and-desist letter, Elevation objected to EFG's use of the EFG Marks.  (Doc. 1 at 6–7.)  But Elevation alleges EFG not only disregarded the

demands set out in that letter, but also accelerated its infringement of the Elevation Marks. (Doc. 1 at 7.)

Elevation further alleges EFG willfully and deliberately intends to trade on the goodwill of the Elevation Marks and to cause confusion and deception in the marketplace by misleading the consuming public. (Doc. 1 at 7.) Elevation alleges EFG has willfully misled the consuming public into believing there is an association between the two companies and their services, used a false designation of origin with EFG's services, and unfairly profited from these activities. (Doc. 1 at 7.)

Most of EFG's alleged misdeeds in this jurisdiction center on its involvement in the Manufacturers' Agents Association for the Foodservice Industry ("MAFSI") conference in Naples, Florida in 2022. (See Doc. 1 at 7–8.) MAFSI is a trade association comprised of around 470 commercial foodservice equipment representatives and manufacturer clients. (Doc. 1 at 7–8.) Elevation has been a MAFSI member since at least 2010. (Doc. 1 at 8.) EFG joined the organization in 2020, but Mr. Marcotte became a MAFSI board member in 2015, while he was a principle of GMV Sales Associates, another foodservice company. (Doc. 1 at 8.) Elevation alleges that Mr. Marcotte knew about Elevation and the Elevation Marks, given his position in the industry and on MAFSI's board. (Doc. 1 at 8.)

Mr. Marcotte's MAFSI directorship is touted on the EFG website, and the company enjoys added exposure because of Mr. Marcotte's position in MAFSI. (Doc. 1 at 8–9.) Besides his directorship, Mr. Marcotte was chair of the 2022 MAFSI conference, and EFG was a named sponsor. (Doc. 1 at 9.) So despite Elevation's

cease-and-desist letter, the EFG Marks were prominently featured at the conference, including convention space signage, golf course signage, the conference's mobile app, the MAFSI website, ribbons attached to attendee name badges, and on presentation screens. (Doc. 1 at 9.) And regarding Mr. Marcotte personally, Elevation alleges he became chair of the MAFSI conference and arranged EFG's sponsorship, which entitled EFG to prominent and pervasive signage; he directed the display of the EFG Marks throughout the MAFSI conference; and as a MAFSI director and the conference chair, Mr. Marcotte gave presentations tied to the EFG Marks. (See Doc. 1 at 9–10.)

What's more, Elevation alleges it could not attend the 2022 MAFSI conference because the waiver it had to sign to participate—waiving any and all claims of whatever kind or nature against (among others) MAFSI sponsors and directors—would compromise its ability to assert its rights vis-à-vis EFG's Marks and actions. (Doc. 1 at 10; Doc. 1-10.) As such, Elevation contends it could not raise or maintain its own brand awareness or otherwise benefit from the conference. (Doc. 1 at 10.) And control over the rules and regulations of the conference (of which the liability waiver was one example), Elevation alleges, was another benefit of Mr. Marcotte's positions as MAFSI director and 2022 MAFSI conference chair. (See Doc. 1 at 10.)

Elevation alleges the EFG Marks and the added exposure EFG garnered from the 2022 MAFSI conference have caused actual confusion in the marketplace. (Doc. 1 at 11.) Elevation cites three times that other entities in the food service

4

industry noted the confusion caused by EFG's conduct and marks, or actually confused the two companies. (Doc. 1 at 11.)

Against this backdrop, Elevation has sued EFG and Mr. Marcotte on five theories: trademark infringement under Section 32(1)[2] of the Lanham Act (Count I); unfair competition under Section 43(a)[3] of the Lanham Act (Count II); violating Florida's Deceptive and Unfair Trade Practices Act[4] ("FDUTPA") (Count III); trademark infringement (Count IV); and unjust enrichment (Count V). (See Doc. 1.) EFG has answered (Doc. 23), but Mr. Marcotte moves for dismissal for lack of personal jurisdiction (Doc. 24.) The parties have fully briefed the issues. (Doc. 32; Doc. 37; Doc. 40.)

## LEGAL STANDARD

When considering a motion to dismiss for lack of personal jurisdiction, courts "accept factual allegations in the complaint as true to the extent that they are uncontested and, in cases of conflict, construe all reasonable inferences in the plaintiffs' favor." Fraser v. Smith, 594 F.3d 842, 846 (11th Cir. 2010). When "the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (internal quotation marks and citations omitted).

---

[2] 15 U.S.C. § 1114(1).
[3] 15 U.S.C. § 1125(a).
[4] Fla. Stat. § 501.204.

## DISCUSSION[5]

Determining whether a court may exercise personal jurisdiction over a non-resident defendant involves a two-part inquiry. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626–32 (11th Cir. 1996). First, the court must determine whether the state's long-arm statute confers jurisdiction over the defendant. Id. at 626–27. Next, the court must determine whether exercising jurisdiction satisfies due process under the Fourteenth Amendment. Id. at 630–32.

The reach of Florida's long-arm statute is a question of Florida state law, and this Court must adhere to decisions of the Florida Supreme Court and Florida's District Courts of Appeal. Id. at 627. But if the Florida Supreme Court is silent and Florida's District Courts of Appeal are split, this Court may defer to the Eleventh Circuit's view. See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1216–17 (11th Cir. 1999).

Due process requires a non-resident defendant to have "certain minimum contacts" with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "[F]ederal courts are duty bound to avoid a constitutional question if

---

[5] Mr. Marcotte submitted a declaration in support of his motion to dismiss (Doc. 24-1), but the declaration was neither dated nor signed, which does not meet the requirements of 28 U.S.C. § 1746. Mr. Marcotte corrected this deficiency by filing an amended declaration that was signed and dated. (Doc. 33 at 4–6.) In any event, the declarations do not contradict Elevation's allegations about Mr. Marcotte's actions leading up to and during the MAFSI conference.

answering the question is unnecessary to the adjudication of the claims at hand." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 807 (11th Cir. 2010).

Accordingly, the Court will begin its jurisdictional analysis with application of Florida's long-arm statute to Mr. Marcotte.

### Florida's Long-Arm Statute

Mr. Marcotte argues he "simply . . . attend[ed] the 2022 MAFSI Conference in Naples, Florida," which cannot by itself establish his minimum contact with Florida. (Doc. 24 at 4.) Elevation responds that Mr. Marcotte's tortious actions related to the 2022 MAFSI conference are directly connected to Florida and establish specific jurisdiction. (Doc. 32 at 4–7.)

Florida's long-arm statute provides for both specific and general jurisdiction. Guarino v. Mandel, 327 So. 3d 853, 861 (Fla. 4th DCA 2021). "Specific jurisdiction requires a showing that the alleged activities or actions of the defendant are directly connected to the forum state." Id. (citation and internal quotation marks omitted). "General jurisdiction, on the other hand, requires a showing that the defendant's connections with the forum state are so substantial that it is unnecessary to establish a relationship between this state and the alleged wrongful actions." Id. (citations and internal quotation marks omitted).

7

Mr. Marcotte argues he is not subject to this Court's specific jurisdiction[6] because he does not conduct business in Florida, does not own Florida real estate, has not availed himself of the privilege of Florida's laws, and has not acted tortiously in Florida. (Doc. 24.) Elevation disagrees and contends this Court may exercise specific jurisdiction over Mr. Marcotte because he committed a tortious act in Florida, which caused Elevation to suffer harm in Florida. (Doc. 32.)

The portion of Florida's long-arm statute relevant to that analysis provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> ...
> 2. Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(2).

First, the Court must determine whether the long-arm statute applies. "[A] motion to dismiss a tort claim for lack of personal jurisdiction under Florida's Long-Arm Statute does not require a full-scale inquiry into whether the defendant committed a tort." Brennan v. Roman Cath. Diocese of Syracuse N.Y., Inc., 322 F. App'x 852, 855 (11th Cir. 2009). But the Court must determine whether Elevation's claims arose from Mr. Marcotte committing a tortious act within Florida. See Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1353 (11th Cir. 2013).

---

[6] Mr. Marcotte argues he is not subject to general jurisdiction or specific jurisdiction. But because Elevation's response addresses only specific jurisdiction, the Court will focus its analysis on specific jurisdiction, too.

As a jumping-off point, the Eleventh Circuit has concluded trademark claims allege "tortious acts" for Florida's long-arm statute.  See id. (citing Licciardello v. Lovelady, 544 F.3d 1280, 1283–84 (11th Cir.2008)).  So Elevation must demonstrate that Mr. Marcotte "committed a substantial aspect of the alleged tort in Florida" by establishing that his activities in Florida were essential to the success of the tort.  See Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988) (quoting Watts v. Haun, 393 So. 2d 54, 56 (Fla. 2d DCA 1981)).

Elevation alleges that Mr. Marcotte took several actions to promote the EFG Marks at the MAFSI conference in Naples, Florida.  (Doc. 32 at 2–3 (citing Doc. 1 at 7–10).)  Elevation specifically alleges Mr. Marcotte infringed on the Elevation Marks, engaged in unfair competition, committed deceptive and unfair trade practices, and was unjustly enriched by (1) using his position as MAFSI director and conference chair to arrange EFG's sponsorship; (2) directing the display of the EFG Marks in prominent and pervasive sponsorship signage; (3) giving presentations tied to the EFG Marks; and (4) controlling the conference rules and regulations, including the liability waiver Elevation claims prevented its own participation at the conference.  (Doc. 1 at 7–10.)

At this stage of the proceedings, the Court need not determine whether Elevation's claims amount to trademark infringement, unfair competition, or deceptive acts.  Its task is simply to determine whether Elevation has satisfied Florida's long arm statute, and in that analysis, it accepts the complaint's

9

allegations as true and evaluates the inferences derived from the allegations in the light most favorable to Elevation. See Fraser, 594 F.3d at 846.

Stated plainly, Elevation alleges that Mr. Marcotte used his influence with MAFSI to promote the EFG Marks—which Elevation maintains are infringing and benefit EFG in terms of associative branding, goodwill, and promotion—at the 2022 MAFSI Conference in Naples, Florida. The Court concludes § 48.193(1)(a)(2) permits specific jurisdiction over Elevation's claims.

## Due Process

Having found Florida's long-arm statute applies to Mr. Marcotte, the Court now turns its attention to "whether the exercise of jurisdiction comports with due process" under the Fourteenth Amendment. SEC v. Marin, 982 F.3d 1341, 1349 (11th Cir. 2020). Under the Due Process Clause, the defendant's contacts with the forum state must be such that "maintenance of the suit" in that forum "does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316–17 (citations and quotation marks omitted). "[T]he defendant's relationship to the forum State" is the main focus of this inquiry. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., — U.S. —, 137 S. Ct. 1773, 1779, 198 L.Ed.2d 395 (2017).

To determine whether exercising specific personal jurisdiction is appropriate under the due process clause, courts examine:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction

10

>  comports with "traditional notions of fair play and substantial justice."

Louis Vuitton, 736 F.3d at 1355 (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (citation and internal quotation marks omitted).

### 1. "Arising Out of" or Relatedness

First, the Court considers whether Elevation's claims "arise out of or relate to [Mr. Marcotte's] contacts with the forum." See Bristol-Myers, 137 S. Ct. at 1780 (alterations and quotation marks omitted). The Court's inquiry focuses "on the direct causal relationship between the defendant, the forum, and the litigation." Louis Vuitton, 736 F.3d at 1355–56 (citation and quotation marks omitted).

Elevation bases many of its allegations on Mr. Marcotte's conduct at the 2022 MAFSI conference in Naples, Florida. And that allegedly tortious conduct comprises many of Elevation's claims against EFG and Mr. Marcotte. Because this controversy arises out of Mr. Marcotte's allegedly tortious conduct at the MAFSI conference, there is a direct relationship among Mr. Marcotte, Florida, and this litigation.

### 2. Purposeful Availment

Second, the Court considers whether Mr. Marcotte has taken some act by which he purposely availed himself of the privilege of conducting activities within Florida.

There are two tests available to determine whether purposeful availment exists when intentional torts are alleged: the "effects test" set forth in Calder v. Jones,[7] and the traditional minimum contacts test. Id. at 1356. Under the "effects test," courts consider whether the tort (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated the plaintiff would suffer in the forum state. Id. (quoting Lovelady, 544 F.3d at 1285–88).

Elevation's complaint alleges that, through his involvement in the MAFSI conference and its planning, Mr. Marcotte acted in an intentional and tortious manner regarding the EFG Marks. His actions were directly aimed at Florida, the venue, and the conference's participants. And because his actions allegedly prevented Elevation from participating in (and directly impeded its business engagement at) the MAFSI conference, he should have anticipated his actions would harm Elevation in Florida. This satisfies the "effects test" for purposeful availment.

But the traditional minimum contacts test is also satisfied. Under the minimum contacts test, the court considers the nonresident defendant's contacts with the forum state and determines whether those contacts: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed itself of the privileges of doing business within the forum; and (3) are such

---

[7] 465 U.S. 783 (1984).

that the defendant should reasonably anticipate being haled into court in the forum." Id. at 1357 (citation omitted).

Mr. Marcotte's actions within Florida directly relate to Elevation's causes of action. He purposefully availed himself of the privileges of doing business in Florida through his actions leading up to and during the MAFSI conference. Elevation alleges Mr. Marcotte promoted EFG through conference sponsorship signage and advanced EFG's brand awareness through his MAFSI directorship and conference chair responsibilities and opportunities. These actions occurred in Florida, were directed to conference attendees in Florida, and allegedly harmed Elevation within Florida by preventing Elevation's own participation at the conference and creating downstream confusion in the marketplace. Mr. Marcotte's contacts with Florida are such that he should reasonably anticipate being hailed into a Florida court.

The Court concludes that purposeful availment is satisfied twice over.

### 3. Traditional Notions of Fair Play and Substantial Justice

And finally, the Court will consider several factors to determine whether exercising personal jurisdiction over Mr. Marcotte is in line with traditional notions of fair play and substantial justice, including: (1) the burden on Mr. Marcotte in defending the lawsuit; (2) Florida's interest in adjudicating the dispute; (3) Elevation's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. See id. at 1358.

13

Mr. Marcotte argues the traditional notions of fair play and substantial justice do not support this Court's exercise of jurisdiction over him. The Court disagrees.

Foremost in the Court's analysis is the fact that EFG has answered Elevation's complaint. This means that both Elevation and Mr. Marcotte's company will prosecute all of Elevation's claims in this forum, and to require Elevation to duplicate its efforts elsewhere against Mr. Marcotte would be a tremendous waste of resources for all parties and the judiciary. Extending this to the considerations of fair play and substantial justice, the burden on Mr. Marcotte in defending this case, Elevation's interest in obtaining convenient and effective relief, and the efficient resolution of this controversy all point to having this dispute tried in Florida. And the remaining considerations do not outweigh this reality.

The Court's exercise of jurisdiction over Mr. Marcotte satisfies Due Process considerations.

## CONCLUSION

Elevation's complaint states allegations sufficient to satisfy Florida's long-arm statute regarding Mr. Marcotte, and the Court concludes its exercise of personal jurisdiction over Mr. Marcotte satisfies due process considerations. Accordingly, it is **ORDERED** that Defendant, Mitchell Marcotte's Motion to Dismiss for Lack of Personal Jurisdiction ([Doc. 24](Doc. 24)) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on November 14, 2022.

_/s/ John L. Badalamenti_
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record